IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,  No. 3:18-cv-00570-HZ

        Plaintiff,  OPINION & ORDER

   v.

SAMMY RASEMA YETISEN,

        Defendant.

Steven A. Platt
Devin Barrett
J. Max Weintraub
Nancy Pham
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Dianne Schweiner
U.S. Attorney's Office – District of Oregon
Civil Division
1000 SW Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for Plaintiff

1 – OPINION & ORDER

Case 3:18-cv-00570-HZ   Document 79   Filed 08/22/22   Page 2 of 15

Ashley M. Simonsen
Isaac D. Chaput
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067

Matthew J. Kalmanson
Hart Wagner, LLP
1000 SW Broadway, Suite 2000
Portland, OR 97205

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff the United States of America ("the Government") seeks to revoke Defendant Sammy Rasema Yetisen's naturalized United States citizenship. The Government previously moved for judgment on the pleadings as to Count IV and Count V of its Complaint. This Court granted the Government's motion as to Count IV for illegal procurement of naturalization due to lack of good moral character and declined to address Count V (procurement of naturalization by concealment of a material fact or by willful misrepresentation). *See United States v. Yetisen*, 370 F. Supp. 3d 1191 (D. Or. 2019). The Ninth Circuit Court of Appeals reversed and remanded. *United States v. Yetisen*, No 19-35200, 2021 WL 4739293 (9th Cir. Oct. 12, 2021).

      Defendant, who is now represented by counsel, filed an Amended Answer on February 7, 2022. ECF 69. The Government moves for judgment on the pleadings as to four of six affirmative defenses that Defendant asserts in her Amended Answer. The Government also moves to strike Defendant's demand for a jury trial. The Court grants in part and denies in part the Government's motion.

## BACKGROUND

      Defendant, who was born in the former Socialist Federal Republic of Yugoslavia, became a naturalized U.S. citizen on May 23, 2002. Compl. ¶¶ 7, 87, ECF 1. Defendant is a Bosnian

2 – OPINION & ORDER

Muslim. *Id.* ¶ 11. In 1993, during the Croat-Bosniak War, she served in a special forces unit within the Supreme Command Staff of the Army of the Republic of Bosnia and Herzegovina. *Id.* ¶ 22. After the war, Defendant appeared at the U.S. embassy in Austria seeking refugee status. *Id.* ¶ 44. Based on representations she made in her Form I-590, Form G-646, and her sworn testimony during her refugee interview, the former Immigration and Naturalization Service ("INS") approved Defendant's request for refugee status, and she entered the United States as a refugee in May 1996. *Id.* ¶ 65. Defendant was granted lawful permanent resident status in March 1998 and naturalized in May 2002. *Id.* ¶¶ 67, 87.

On September 21, 2009, the Prosecutors Office of Bosnia and Herzegovina issued a warrant for Defendant's arrest for war crimes committed during the Croat-Bosniak War. *Id.* ¶¶ 90, 91. Prosecutors accused her of participating in the execution-style murders of several Croat civilians and prisoners of war during an attack on the village of Trusina on April 16, 1993. *Id.* ¶ 90. This Court granted the Government's request for a certificate of extraditability, and Defendant was extradited to Bosnia and Herzegovina in December 2011. *Id.* ¶¶ 97, 99; *In re Handanovic*, 829 F. Supp. 2d 979 (D. Or. 2011). In April 2012, Defendant entered into a plea agreement and was convicted of participating in war crimes against civilians and prisoners of war under the criminal code of Bosnia and Herzegovina. *Id.* ¶¶ 101, 102. She was sentenced to a term of imprisonment of five years and six months. *Id.* ¶ 103. Upon release after serving her term, Defendant returned to Oregon where she currently resides.

In April 2018, the Government filed a civil action to revoke Defendant's naturalized U.S. citizenship. The Government contends that Defendant illegally procured her naturalization because she did not meet the "good moral character" requirement under 8 U.S.C. § 1427(a)(3)

and because she willfully misrepresented and concealed her military service and her participation in summary executions of civilians and prisoners of war during the Trusina massacre.

On October 12, 2021, the Ninth Circuit reversed this Court's grant of judgment on the pleadings for the Government as to Count IV (lack of good moral character) and remanded the case for further proceedings. The Government now moves for judgment on the pleadings as to Defendant's affirmative defenses of laches, collateral estoppel, ambiguity, and ineffective assistance of counsel and moves to strike Defendant's demand for a jury trial.

## STANDARDS

### I.   Rule 12(c)—Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court will grant a motion for judgment on the pleadings if there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Id*. A Rule 12(c) motion may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to allege a cognizable claim. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).

### II.   Rule 12(f)–Motion to Strike

The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*,

618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), aff'd, 608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings.") (quotation marks and alterations omitted).

## DISCUSSION

The Government moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to four of Defendant's affirmative defenses: laches, collateral estoppel, ambiguity, and ineffective assistance of counsel. The Government also moves to strike Defendant's demand for a trial by jury.

**I.      Motion for Judgment on the Pleadings under Rule 12(c)**

As an initial matter, the Court addresses whether a motion under Rule 12(c) is the proper vehicle for the Court to grant the relief the Government seeks. The usual goal of a Rule 12(c) motion is entry of judgment in favor of the moving party. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2022). In general, a plaintiff who seeks to strike fewer than all defenses raised in the defendant's pleading should proceed under Rule 12(f) rather than Rule 12(c). *Id.* Some courts have held that when the substance of the motion is to challenge the legal sufficiency of certain defenses, motions for judgment under Rule 12(c) are not appropriate. *E.g.*, *Dysart v. Remington Rand*, 31 F. Supp. 296, 297 (D. Conn. 1939). As one court noted, "even if it should be held that each and every of the special defenses attacked was insufficient in law, still it would not follow that the plaintiff would be entitled to judgment." *Id.*

5 – OPINION & ORDER

However, in more recent years, courts have granted partial motions for judgment on the pleadings. *Bradley v. Fontaine Trailer Co., Inc.*, No. 3:06-cv-62 (WWE), 2009 WL 763548, at *3 (D. Conn. Mar. 20, 2009) (citing 5C Charles Alan Wright & Arthur C. Miller, Federal Practice & Procedure § 1369 (3d ed. 2004)); *see Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *2 (N.D. Cal. July 25, 2008) ("Although Rule 12(c) neither specifically authorizes nor prohibits motions for judgment on the pleadings directed to less than the entire complaint or answer . . . it is the practice of many judges to permit partial judgment on the pleadings (e.g. on the first claim of relief, or the third affirmative defense).") (internal quotation, citation, and internal brackets omitted). "While Rule 12(c) does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure." *New York v. Micron Tech, Inc.*, No. C 06-6436 PJH, 2009 WL 29883, at *3 (N.D. Cal. Jan. 5, 2009).

Courts have recently held that both motions for judgment on the pleadings under Rule 12(c) and motions to strike under Rule 12(f) are appropriate ways to challenge the sufficiency of an affirmative defense. *Aaron v. Martin*, No. 4:11CV1661 FRB, 2013 WL 466242, at *2 (E.D. Miss. Feb. 7, 2013). Under either rule, courts apply the same standard of review. *Spears v. First Am. eAppraiselt*, No. 5-08-CV-00868-RMW, 2013 WL 1748284, at *6 (N.D. Cal. Apr. 23, 2013); *Silva v. B&G Foods, Inc.*, No. 20-cv-00137-JST, 2021 WL 3160865, at *2 (N.D. Cal. July 23, 2021). But given the nature of the Government's challenges and the relief sought, the Court construes the motion as if it were a motion to strike and addresses it as such.[1]

---

[1] A Rule 12(f) motion would technically be untimely. Under Rule 12(f)(2), a party must file a Rule 12(f) motion within 21 days of being served with a responsive pleading. Defendant filed her Amended Answer on February 7, 2022, and the Government filed this motion on March 21, 2022. However, "[t]he authority given the court by Rule 12(f)(1) to strike an insufficient defense on its own initiative at any time has been interpreted to allow the district court to consider untimely motions to strike and to grant them if doing so seems proper." *Aaron*, 2013 WL 466242, at *2 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

**II.    Equitable Defenses**

The Government contends that Defendant cannot assert the affirmative defenses of laches, collateral estoppel, or ambiguity because they are equitable defenses, which according to the Government, are never available in civil denaturalization cases. The Government argues that equitable defenses are prohibited in such cases because: (1) "naturalization is not a traditional or inherent equity power of the courts" and (2) "even if courts had traditional power to equitably naturalize noncitizens, such power has been superseded by statute." Pl. Mot. J. Pleadings 5-6, ECF 72. Defendant asserts that the Government's sovereign interest in naturalization does not necessarily apply to civil denaturalization and argues that the Supreme Court has never held that equitable defenses are *per se* unavailable in civil denaturalization cases.

A civil denaturalization proceeding is a suit in equity. *Luria v. United States*, 231 U.S. 9, 27-28 (1913). "The right asserted and the remedy sought" in a denaturalization proceeding are "essentially equitable not legal." *Id.* Nevertheless, the power to determine whether a person is eligible for naturalization "has not been conferred upon federal courts . . . as one of their generally applicable equitable powers." *I.N.S. v. Pangilinan*, 486 U.S. 875, 883-84 (1988). Rather, Congress has bestowed upon courts the specific function of naturalizing citizens only in strict compliance with the terms and conditions of the authorizing statute. *Id.* at 884; *see* 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."). In other words, in determining whether a person is eligible for naturalization, "courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law."

---

Procedure § 1380 (3d ed. 2012)). Thus, even construing the Government's motion as a motion to strike, the Court has authority to rule on the motion.

*Id.* at 883 (citation omitted). Therefore, when a court determines that a person does not qualify for citizenship, it has no equitable discretion "to ignore the defect and grant citizenship." *Fedorenko v. United States*, 449 U.S. 490, 517 (1981).

The Government relies on *Fedorenko* and *Pangilinan* to argue that because courts lack equitable discretion to grant citizenship, Defendant's equitable defenses of laches, collateral estoppel, and ambiguity in this denaturalization case are improper. Defendant argues that *Pangilinan*, which was a naturalization case, has no bearing on the question of whether equitable defenses are available in denaturalization proceedings.

No binding precedent clearly defines whether federal courts lack of discretion to confer citizenship precludes equitable defenses in denaturalization cases. The parties disagree as to whether a distinction between naturalization and denaturalization proceedings is relevant to whether equitable defenses apply to the later. On the one hand, courts have held that, unlike naturalization proceedings, denaturalization is an unusual civil action because taking away a person's citizenship is an extraordinarily severe penalty. *See Klapprott v. United States*, 335 U.S. 601, 611 (1949) ("Denaturalization consequences may be more grave than consequences that flow from conviction for crimes."). Accordingly, "[t]he Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." *Costello v. United States*, 365 U.S. 265, 269 (1961). Because of the severe consequences to the citizen, "naturalization decrees are not lightly to be set aside—the evidence must be 'clear, unequivocal, and convincing' and must not leave 'the issue in doubt.'" *Id.* (quoting *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)).

On the other hand, some courts have held that the purpose of denaturalization is not punishment or deterrence of future violations. *United States v. Phattey*, 943 F.3d 1277, 1282

(9th Cir. 2019). Rather, "the purpose of denaturalization is to remedy a past fraud by taking back a benefit to which the alien is not entitled and thus restoring the status quo ante." *Id.* at 1283. Thus, based on the power conferred by statute, if the Government meets its high burden of proving citizenship was fraudulently obtained, "a court must enter a judgment of denaturalization—it lacks discretion to do otherwise." *United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016). "[O]nce a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct." *Fedorenko*, 449 U.S. at 517.

      The Government relies on the principles established in cases like *Fedorenko* to assert that equitable defenses are never available in denaturalization proceedings. But "*Fedorenko*'s holding is narrower than the Government suggests." *United States v. Becker*, No. CV 18-2049-GW (AGRX), 2019 WL6167396, at *3, (C.D. Cal. June 20, 2019). The Supreme Court in *Fedorenko* held that once the Government has established that the citizen did not meet the statutory requirements for naturalization, a court lacks discretion to deny the Government's requested relief. 449 U.S. at 517. But such a holding does not preclude a court from considering Defendant's equitable defenses when it determines whether the Government has met its burden of proof. The Government points to no case that definitively holds that equitable defenses are unavailable to a naturalized citizen in civil denaturalization proceedings. Without clear precedent, the Court declines to make such a finding. Thus, the Court holds that Defendant is not categorically barred from asserting affirmative defenses that are equitable in nature.

9 – OPINION & ORDER

### III. Specific Defenses

Along with making the general assertion that equitable defenses are prohibited in civil denaturalization cases, the Government specifically argues that the Court should strike Defendant's affirmative defenses of laches and ineffective assistance of counsel.

#### A. Laches

The Government contends that a laches defense is categorically unavailable in civil denaturalization cases. The Government relies on a Supreme Court precedent, which establishes that in its sovereign capacity, "the United States is not subject to a defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see United States v. Hamed*, 976 F.3d 825, 831 (8th Cir. 2020) ("Laches is unavailable against the United States when it is proceeding in its sovereign capacity.") (citation and brackets omitted). Regulation of immigration and naturalization is generally considered a core inherent power of the United States as sovereign. *Arizona v. United States*, 567 U.S. 387, 394 (2012). The Supreme Court has noted that "[i]t has consistently been held in *the lower courts* that delay which might support a defense of laches in ordinary equitable proceedings between private litigants will not bar a denaturalization proceeding brought by the Government." *Costello*, 365 U.S. at 281 (emphasis added).

But in *Costello*, the Supreme Court also noted that *it* had not previously considered whether laches applies in a denaturalization proceeding. *Id.* at 282. Importantly, the Court in *Costello* did not hold that a laches defense was unavailable. *Id.* Rather the Court analyzed and denied the defendant's laches defense because the defendant had failed to prove the necessary elements. *Id.* In no subsequent case has the Supreme Court held that a laches defense is barred in denaturalization proceedings.

10 – OPINION & ORDER

The Ninth Circuit has not yet determined whether a laches defense is available in denaturalization proceedings. *See United States v. Dang*, 488 F.3d 1135, 1143-44 (9th Cir. 2007) ("It remains an open question in this circuit as to whether laches is a permissible defense to a denaturalization proceeding.").[2] "Both the Supreme Court and the Ninth Circuit have assumed the availability of a laches defense to defendants in denaturalization suits, and have evaluated their laches defenses on the merits." *United States v. Becker*, No. CV 18-2049-GW(AGRX), 2021 WL4498649, at *14 (C.D. Cal. Apr. 12, 2021) (citing *Costello*, 365 U.S. at 281-82; *Dang*, 488 F.3d at 1444); *see United States v. Arango*, 686 F. App'x 489, 490 (2017) ("Even assuming laches is a permissible defense, Arango's claim fails as the district court did not err in concluding that Arango failed to prove lack of diligence by the government.").

The Court recognizes that the Government has often successfully brought denaturalization cases many years after defendants had been granted naturalization. *See, e.g., Teng Jiao Zhou*, 815 F.3d at 641 (commencing denaturalizing proceedings twenty years after the defendant naturalized); *United States v. Arango*, No. CV 09-178 TUC DCB, 2014 WL 7179578 (D. Ariz. Dec. 17, 2014), *aff'd,* 686 F. App'x 489 (2017) (denaturalizing suit brought sixteen years after naturalization); *United States v. Multani*, No. 2:19-cv-01789-BJR, 2021 WL 633638 (W.D. Wash. Feb. 18, 2021) (initiating civil denaturalization proceeding thirteen years after the defendant naturalized). And Defendant presents no case in which a citizen successfully prevailed in a denaturalization case based on a laches defense. Nevertheless, because no binding precedent establishes that a laches defense is categorically barred in civil denaturalization proceedings, the Court denies the Government's motion strike Defendant's laches defense.

---

[2] In remanding this case, the Ninth Circuit stated: "In light of our disposition, we need not address whether laches can be raised as a defense to a denaturalization proceeding[.]" *Yetisen*, 2021 WL 4739293, at *3.

11 – OPINION & ORDER

B.  **Ineffective Assistance of Counsel**

In her Amended Answer, Defendant asserts that "Plaintiff's claims are barred in whole or in part because [Defendant's] criminal defense counsel failed to advise her that a criminal plea in Bosnia and Herzegovina could form the basis for the Government to seek denaturalization." Am. Ans., Sixth Affirmative Defense. Thus, Defendant claims that ineffective assistance of counsel during her foreign criminal proceedings is a defense to the Government's claim for denaturalization. The Government argues that such a defense is impermissible in Defendant's civil case because, if she were successful in asserting ineffective assistance of counsel, the remedy would be to reopen her foreign criminal case. In her Response Brief, Defendant asserts that her "ineffective assistance claim is not a true affirmative defense." Def. Resp. Pl. Mot. J. Pleadings 12, ECF 76. Rather, Defendant argues that because she was not fully informed about the consequence of her guilty plea to her United States citizenship, the Government should not be permitted to rely on the plea as evidence to support revoking her naturalization. In essence, Defendant appears to claim that the criminal judgment in Bosnia based on her guilty plea should not be given preclusive effect.

To the extent that Defendant asserts an affirmative defense of ineffective assistance of counsel, such a defense is unavailable. Defendant cannot challenge her criminal conviction in Bosnia and Herzegovina through a civil denaturalization proceeding in this Court. *See United States v. Salem*, 496 F. Supp. 3d 1167, 1183 (N.D. Ill. 2020) ("A denaturalization case is not the right time or place to challenge a criminal conviction."). Thus, the Court grants the Government's motion as to Defendant's affirmative defense of ineffective assistance of counsel.

## IV.     Demand for a Jury Trial

The Government moves to strike Defendant's demand for a jury trial. A party may have a right to a civil trial by jury under the Seventh Amendment of the United States Constitution. Fed. R. Civ. P. 38(a)(1). But under Rule 39(a)(2), a district court has the authority to deny a party's jury trial demand if the court finds that the party does not have a federal right to trial by jury. "The Seventh Amendment preserves the right of a trial by jury to suits at common law, but not in equity." *Becker*, 2019 WL 6167396, at *6 (citing *Ross v. Bernhard*, 396 U.S. 531, 533 (1970)). "[D]enaturalization actions are suits in equity to which the Seventh Amendment does not apply[.]" *Id.* at 7 (citation omitted); *see Luria*, 231 U.S. at 27-28. Thus, there is no federal right to a jury trial under the Seventh Amendment for denaturalization proceedings.

Defendant argues that even if the Seventh Amendment does not apply, she has a right to a jury trial under the Fifth Amendment Due Process Clause. Defendant asserts that despite being the result of a civil proceeding, denaturalization is "an extraordinarily severe penalty." *Klapprott*, 335 U.S. at 612. Thus, Defendant contends, due process requires greater procedural protections than ordinary civil cases.

But despite the potentially grave consequences of a denaturalization and the high burden on the Government to prove its case, "the Supreme Court has long held that the revocation of citizenship under these denaturalization provisions is not a penalty." *Phattey*, 943 F.3d at 1281. Indeed, the Supreme Court has held that denaturalization "merely deprives the alien of a privilege that was never rightfully his." *Id.* (quoting *Johannessen v. United States*, 225 U.S. 227, 242-43 (1912)). Thus, Defendant cannot show that the rights at stake are so severe that procedural protection akin to the Sixth Amendment right to a jury trial in criminal cases would be required.

13 – OPINION & ORDER

In addition, Defendant fails to adequately show that her procedural due process rights would not be adequately protected by procedures provided by statute. "Though revocation of citizenship is a severe sanction, due process [is] satisfied by a fair trial before an impartial decision maker." *United States v. Schellong*, 717 F.3d 329, 336 (7th Cir. 1983), *cert. denied*, 465 U.S. 1007 (1984). As one court noted:

> Defendants in revocation of naturalization proceedings are provided with numerous procedural protections. The Supreme Court has established a "heavy burden of proof" in denaturalization proceedings, including that evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt. . . . [8 U.S.C. § 1451] itself contains additional procedural protections. The government is required to initiate denaturalization proceedings in federal court, which encompasses all the procedural protections afforded therein by the Federal Rules of Civil Procedure including entitlement to discovery . . . and an impartial judge.

*Multani*, 2021 WL 633638, at *7. Analyzing the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court in *Multani* found that procedural due process is satisfied by the statutory procedures for denaturalization Congress provided in 8 U.S.C. § 1451(a), which does not include the right to a jury trial. 2021 WL 633638, at *7; *see Becker*, 2019 WL 6167396, at *7 (citation omitted) ("[T]he denaturalization statute, 8 U.S.C. § 1451(a) does not provide a jury trial.")

Accordingly, the Court grants the Government's motion to strike Defendant's demand for a jury trial.

///

///

///

## CONCLUSION

The Court GRANTS in part and DENIES in part the Plaintiff's Motion for Judgment on the Pleadings and Motion to Strike Jury Demand [72].

IT IS SO ORDERED.

DATED:___August 22, 2022_____.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge